**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 08-24 |
|---|---|---|
| VERSUS | * | |
| CHARLES NEUMAN | * | SECTION "L" |

**ORDER & REASONS**

The Court has pending before it Defendant Charles Neuman's Motion for New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure (Rec. Doc. 265) and motion for an evidentiary hearing on that motion (Rec. Doc. 275).[1] The Government has filed an opposition and Mr. Neuman has filed a reply. The Court has reviewed the briefs and now issues this Order and Reasons.

**I.    FACTUAL BACKGROUND**

**A.    Defendant's Indictment, Trial, and Conviction**

This case arises out of Defendant's trafficking in counterfeit Nike shoes and other products in the New Orleans area. On February 1, 2008, a grand jury returned a five-count Indictment against the Defendant Charles Neuman and a co-Defendant. On August 1, 2008, the Government filed a six-count Superseding Indictment alleging that the Defendant and two co-Defendants sold various counterfeit goods in violation of Title 18, United State Code, Sections 371, 545, 2320, and 2322. On January 9, 2009, a grand jury returned a five-count Second

---

[1] Defendant has also filed a motion for relief under 28 U.S.C. § 2255 (Rec. Doc. 269). The Court recently granted him additional time to file a reply brief.

Superseding Indictment against only Defendant (Rec. Doc. 109). The Second Superseding Indictment charged him with conspiracy to intentionally traffic in counterfeit goods, trafficking in counterfeit goods, concealing and facilitating the transportation of merchandise imported contrary to law, and being a felon in possession of a firearm.

Defendant waived the thirty-day restriction of 18 U.S.C. § 3161(c)(2) and trial commenced on January 26, 2009. (Rec. Doc. 152). After a four-day trial, the jury found Mr. Neuman guilty as to all five counts in the Second Superseding Indictment, including Count 5, the firearm possession charge. (Rec. Doc. 166). Sentencing took place on July 30, 2009. Mr. Neuman was sentenced to 210 months imprisonment on Count 5, the firearm possession charge. (Rec. Doc. 235).[2] He appealed to the Fifth Circuit Court of Appeals, which affirmed in all respects. *United States v. Neuman*, 406 F. App'x 847 (5th Cir. 2010). He did not challenge the conviction on the firearm possession charge on appeal. *Id.* at 849 n.1.

Now, Defendant has filed a motion for a new trial. His motion for a new trial pertains solely to Count 5 of the Second Superseding Indictment, the firearm possession charge.

At trial, the undisputed testimony established that Defendant's warehouse, where he stored the counterfeit shoes and goods, had previously been robbed by a group of six masked men armed with guns and rifles. Defendant and several of his employees were made to lay down on the floor and were bound with duct tape. Shortly after that robbery Defendant, his employees Justin Nichols and John Sterling, and one other employee visited a gun show. Defendant purchased a stun gun. John Sterling purchased a 9mm handgun and a .380 caliber Kel-Tec revolver. Sterling purchased the two guns with money loaned by Defendant.

---

[2]He was also sentenced to 60 months as to Count 1, 120 months as to Counts 2 and 3, and 210 months as to Count 4, all to run concurrently.

The testimony at trial amply supported the jury's finding that Defendant possessed the .380 caliber gun. First, his employee Justin Nichols testified that the .380 caliber revolver was kept at the warehouse office in a desk for protection. (Rec. Doc. 254, 441:5-11). He testified that he had seen Defendant handle the gun at the warehouse. (*Id.* at 441:12-14).

Pou Vatthongxay, Defendant's girlfriend, testified that Defendant had brought the .380 caliber gun back to their apartment, where he stored it under the sofa for several months. Rec. Doc. 254, 385:2-21. She testified that on the day that ICE agents executed a search warrant at the warehouse, Defendant called her and asked her to "do something" about the gun under the sofa. *Id.* at 387:2-13. She hid the gun in the fireplace, where it evaded discovery by ICE agents searching the apartment. *Id.* at 387:15-388:15. Later, Defendant asked her where she put the gun, retrieved it, and then called John Sterling to come by and pick up the gun. *Id.* at 389:2-25.

John Sterling testified that he purchased the .380 caliber gun with Defendant's money at a gun show, and that the gun was initially kept at the warehouse. *Id.* at 509:22-510:18, 512:22-513:5. Mr. Sterling testified that Defendant called him after the ICE raid on the warehouse to come to Defendant's apartment, at which time Defendant gave him the .380 caliber gun. *Id.* at 513:25-514:19. Mr. Sterling maintained possession of the gun until he handed it over to ICE agents. *Id.* at 515:10-25. He testified that:

> The only time I seen him [Defendant] with this gun is own two occasions, when we got it that day at the gun shop and I gave it to him for the warehouse, you know, lock it up in the – but we had an alarm in there, you know, and the day he gave it back to me in the front of his house. That's the only two times.

*Id.* at 524:15-21.

The Court administered the Fifth Circuit pattern jury instruction for 18 U.S.C. § 922(g)(1), felon in possession of a firearm, as well as the pattern jury instruction on the meaning

of "possession." The jury found Defendant Guilty of Count 5.

B.      **Defendant's Purported Newly-Discovered Evidence**

Defendant now submits three "affidavits" that purportedly constitute newly-discovered evidence calling into question his conviction on Count 5. He argues that two trial witnesses now make statements inconsistent with their trial testimony, which undermines their credibility and the version of the facts adduced at trial. Accordingly, Defendant contends he is entitled to a new trial.

First, Defendant submits an affidavit from David Centanni, apparently a private investigator, who "interviewed Justin Nichols in New Orleans" on February 8, 2011, more than two years after the trial. (Rec. Doc. 265-1 at 7). Mr. Nichols "was provided a copy of an Affidavit to sign ... which he refused to sign on the premise that he 'did not wish to participate in this matter.'" *Id.* Nonetheless, Mr. Centanni states that Nichols stated the following:

> 1.      A month or two prior to the search of October 18, 2007 Nichols stated he had borrowed a gun from John Sterling. This weapon was a Keltec .38 caliber. He'd borrowed it because he wanted a gun that was small enough to fit in his pocket.
> 2.      Nichols stated that he had inadvertently left the above weapon in Nike shoe box in the work van that was parked at Charlie's apartment on his way to a concert a week or two prior to the search on October 18, 2007.
> 3.      Nichols did not have a clear recollection of whether he had provided the above information to the prosecutor and law enforcement personnel involved in the Charlie Neuman prosecution because he had been interviewed for a long duration of time and could not now recall what information he had provided to them.
> 4.      Nichols stated that he had failed to tell the prosecutors in the Charlie Neuman case that the bullet found in the van was his. He never revealed this information to the prosecutor or the defense attorney as they never asked him this question.

*Id.*

Second, Defendants submits the affidavit of "Steven Kerry Brown, licensed private investigator," who interviewed John Sterling and was told the following:

1. Sterling stated that he worked for Charlie Neuman. During the time that he knew Charlie he had never known him to carry a gun.
2. Sterling stated that they were robbed once at the warehouse, so he bought the .380 at a gun show. He said that we (myself, Justin Nichols, and Val Gomez) wanted it for self-protection in case we were robbed again.
3. This .380 Sterling bought at the gun show was not kept in Charlie's apartment.
4. Before the Feds confiscated the merchandise from the warehouse, Justin Nichols evidently borrowed the gun and Sterling was told he had accidentally left it in the work van. Sterling was told that Charlie couldn't get Justin to pickup [sic] the gun so he called Sterling and told him "to come over as he had something for me. When I arrived he gave me the gun (the .380) he didn't want to leave it laying there."
5. Sterling stated that Charlie was not the type of guy to have a gun on his person at any time. He said that he had never seen him with the .380 or any gun until he asked him to pick up the .380 that Justin left in the van.

(Rec. Doc. 265-1 at 9).

Finally, Defendant submits a document labeled "Affidavit" and signed with the name "John Sterling." The document is not sworn or notarized. That document reads:

I, John Sterling, state the following statement is true:

1. I had picked up my gun, (Kel tec .380) from Charles Neuman one or two weeks prior to Oct. 18, 2007, (?date)[3] and not on the day of the search of Charles Neuman's warehouse.

2. Although I had picked up the gun from Charles Neuman, I don't recall ever giving him the gun as I have stated originally when ICE agents questioned me on Dec. 12, 2008.

3. As I have stated to the ICE agents, I have never known Charles Neuman to carry a gun.

(Rec. Doc. 265-1 at 11).

---

[3]An arrow is drawn on the document from the typed date "Oct. 18, 2007" to the hand-written note "?date".

5

## II. LAW & ANALYSIS

Pursuant to Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). "Motions for new trial based on newly discovered evidence are disfavored and reviewed with great caution." *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004). "As a general rule, there are five prerequisites (typically referred to as the *Berry* rule) that must be met to justify a new trial on the ground of newly discovered evidence." *Id.* Those factors require the defendant to prove that:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

*Id.*[4] Failure to show any of these factors mandates denial of a motion for new trial. *United States v. Freeman*, 77 F.3d 812, 817 (5th Cir. 1996). In its discretion, the Court may rule on a motion for a new trial without holding an evidentiary hearing, particularly in light of the Court's "previously acquired familiarity with the evidence." *See United States v. Blackthorne*, 378 F.3d 449, 455-56 (5th Cir. 2004).

As a threshold issue, a motion for a new trial may not be based on inadmissible hearsay.

---

[4]Defendant suggests that he should benefit from the different standard for new trial motions that applies if the Government knowingly obtains a conviction through the use of false evidence. *See Wall*, 389 F. 3d at 472-73 ("This court has recognized that if the government used false testimony that it knew or should have known was false, then the standard applied for newly discovered evidence is slightly more lenient."). However, the purported inconsistencies between the new affidavits and the trial testimony fall woefully short of demonstrating that any witness deliberately perjured him or herself, let alone that the Government was aware of any such perjury.

*See Wall*, 389 F. 3d at 471. Here, Mr. Neuman presents two affidavits from private investigators who report what they were told by witnesses who testified at trial. The statements of the witnesses are textbook hearsay and thus are not admissible evidence for the purpose of this motion for a new trial. The third affidavit, from Mr. Sterling, is neither sworn nor made under penalty of perjury, *see* 28 U.S.C. § 1746, and also does not constitute competent evidence. Thus, Defendant's motion is wholly unsupported by admissible affidavit and can be denied for that reason alone.

However, under these circumstances the Court will also address the contents of that inadmissible evidence because, even if admissible and taken as true, the evidence would not probably produce an acquittal on Count 5 if introduced at a new trial. None of the new evidence exonerates Defendant or states that he never had the .380 caliber gun and physically returned it to Mr. Sterling, as both Ms. Pou and Mr. Sterling testified at trial. In order to hand the gun over, Neuman must have physically possessed it, and that fact is not contradicted by any testimony in the trial record or in Defendant's new affidavits. Although the new testimony, if admissible and taken as true, might inject some minor uncertainty as to when the handover took place, it does nothing to refute the undisputed fact that at some point in close proximity to the ICE raid, Neuman had physical possession of the handgun and gave it to John Sterling, who then gave it to law enforcement authorities. Mr. Sterling does not deny this in his new affidavit. Thus, even if the new evidence were admitted at trial, all the witnesses would still testify that Defendant had the gun in his physical possession when he returned it to Sterling. Possession need not be lengthy; indeed, simply voluntarily holding a gun for "a few seconds" can sustain a conviction. *See United States v. Matthews*, 520 F.3d 806 (7th Cir. 2008) (explaining that "merely holding a firearm for a brief period of time is sufficient to constitute possession within the meaning of

section 922"); *United States v. Mercado*, 412 F. 3d 243 (1st Cir. 2005) (holding that "momentary or fleeting possession may constitute possession for the purposes of § 922(g)"). Accordingly, the outcome would probably not change.

Defendant argues that the trial testimony gave the jury "the misconception that the petitioner did actually possess the firearm on that particular day and no other day," (Rec. Doc. 268 at 4). Therefore, he contends, there was an impermissible variance between the trial proof and the charge in the Second Superseding Indictment as to the alleged time of possession of the gun. Defendant is wrong. "An allegation as to the time of the offense is not an essential element of the offense charged in the indictment, and, within reasonable limits, the offense need only occur before the return of the indictment and within the statute of limitations." *United States v. Valdez*, 453 F.3d 252, 259-60 (5th Cir. 2006) (quotation and alteration omitted). Where the prosecution charges a crime "on or about" a date, the Government is "not required to prove the exact date; it suffices if a date reasonably near is established." *Id.* at 260. The Second Superseding Indictment charged Defendant with possession of a Kel-Tec .380 firearm "[f]rom a time unknown but on or after February 4, 2007, and continuing until or about October 18, 2007." (Rec. Doc. 109 at 4-5). The proof adduced at trial, even supplemented by the "new" testimony, is consistent with and not a variance from the charge in the Indictment.

The record clearly supports Defendant's conviction on Count 5 of the Second Superseding Indictment. His newly discovered "affidavits," even if admissible, would not warrant a new trial because they would not probably produce an acquittal on that count. An evidentiary hearing on this matter would be fruitless, and accordingly no evidentiary hearing will be held on the motion for a new trial.

**III.    CONCLUSION**

For the foregoing reasons, Defendant's motion for a new trial (Rec. Doc. 265) and motion for an evidentiary hearing on the motion for a new trial (Rec. Doc. 275) are DENIED.

New Orleans, Louisiana, this 7th day of May, 2012.

                                                    UNITED STATES DISTRICT JUDGE